United States District Court
Southern District of Texas
**ENTERED**
December 26, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EMMA BERRY, | § |
| | § |
| Plaintiff, | § |
| v. | § CIVIL ACTION NO. 23-4598 |
| | § |
| CITY OF HOUSTON, *et al.*, | § |
| | § |
| Defendants. | § |

**MEMORANDUM AND OPINION**

Emma Berry, a temporary employee of the City of Houston hired during COVID, alleges that during her employment, the City harassed her and discriminated against her because she was Muslim and from Egypt, then retaliated against her for complaining. She also alleges First Amendment violations against the City and two of its employees.[1] The defendants have moved for summary judgment on all claims, (Docket Entry No. 44), and Ms. Berry has responded, (Docket Entry No. 51). Based on the pleadings, briefing, summary judgment record, and applicable law, the court grants the defendants' motion and dismisses this case.[2] The reasons are stated below.

**I.   Background**

There are disputes as to the facts, but taking the disputed facts in the light most favorable to Ms. Berry, summary judgment is nonetheless appropriate. The facts show a temporary

---

[1] The Title VII claims against the individual defendants were dismissed. (Docket Entry No. 36).

[2] The Motion to Compel Defendants to Produce Verified Interrogatory Responses, (Docket Entry No. 42), is dismissed as moot. Ms. Berry also moved under Federal Rule of Civil Procedure 12(f) to strike portions of the defendants' reply in support of their motion for summary judgment. (Docket Entry No. 57). Because Rule 12(f) only authorizes courts to "strike from a *pleading*," *see* FED. R. CIV. P. 12(f) (emphasis added), that motion is denied.

employee who created, and received, workplace friction and unpleasantness, but not based on unconstitutional grounds. The facts do not permit an inference that there was discrimination or harassment based on animosity to the employee's national origin or religion, or in retaliation for her complaints.

Ms. Berry was hired in July 2020 as a temporary at-will employee of the Houston Health Department, under a contract funded by COVID money. (Docket Entry No. 45-1 at 1); (Docket Entry No. 45-10). The position was anticipated to end no later than December 2020 but was extended to a later date. (Docket Entry No. 45-1 at 1–2); (Docket Entry No. 44-6). As a temporary employee, Ms. Berry was not entitled to civil service protections, including a corrective action program. (Docket Entry Nos. 45-10, 45-17). The City's policies permit it to terminate temporary employees "at any time without prior warning if they are unwilling or unable to give satisfactory service or for any violation of policy or procedure." (Docket Entry No. 45-10).

In 2021, Ms. Berry's manager was Zaida Janet Ikpeme, who reported to the Houston Health Department Division Manager Beverly Brownlow, who reported to Paula Johnson, the Bureau Chief for the Department's Area Agency on Aging. (Docket Entry No. 45-1 at 1). Ms. Berry has named both Ms. Ikpeme and Ms. Johnson as defendants. (Docket Entry No. 31). The court previously dismissed all of Ms. Berry's Title VII claims against Ms. Ikpeme and Ms. Johnson. (Docket Entry No. 36).

Ms. Berry first reported that she felt she was treated discriminatorily in May 2022. *See* (Docket Entry No. 44-9). In an email to Ms. Ikpeme, followed by emails to Ms. Brownlow and Ms. Johnson, Ms. Berry complained that she had "experienced … Humiliation and Mobbing at work" by a group of other employees who came in and left at the same time she did, and who parked in the same parking garage, near her parking place. (*Id.*); (Docket Entry No. 45-3). She

also complained that Ms. Ikpeme had talked to her at a lunch once about Jesus, including stating that those who do not believe in Jesus are "lost." (Docket Entry Nos. 44-9, 45-3).

The day after Ms. Berry sent the emails to Ms. Brownlow and Ms. Johnson, they convened a meeting between Ms. Berry and Ms. Ikpeme. (Docket Entry No. 45-1 at 2). Ms. Ikpeme agreed not to discuss religion with Ms. Berry, and it did not happen again. (*Id.* at 3); *see also* (Docket Entry No. 45-9 at 3). It is unclear what was discussed about Ms. Berry's belief that a group of coworkers who arrived at and left work from the same parking garage at the same times as Ms. Berry were "mobbing" her. *See* (Docket Entry No. 45-1 at 2–3). Ms. Berry did not tell Ms. Brownlow or Ms. Johnson that this was based on her religion or national origin. (*Id.* at 3).

The meeting did not resolve the situation. Ms. Berry filed an EEOC charge, (Docket Entry No. 45-13), and a complaint against Ikpeme with the City's Office of Inspector General. (Docket Entry No. 45-11). The Office of Inspector General investigated and found insufficient evidence to proceed. (Docket Entry No. 45-18).

Before, during, and after these events, Ms. Berry described a series of events in sinister terms. For example, in June 2021, Ms. Ikpeme asked Ms. Berry for a copy of her driver's license and names of family members. (Docket Entry No. 31 at 4). Ms. Berry described this as a "trespass on Berry's personal information." (Docket Entry No. 51 at 2). When Ms. Berry's job was extended past the originally anticipated end date, Ms. Ikpeme reminded her that the job was temporary, which Ms. Berry viewed as inappropriate. (Docket Entry No. 31 at 5). Ms. Johnson and Ms. Ikpeme tried to have Ms. Berry sign an acknowledgment of temporary employment, which Ms. Berry refused to do because she insisted that she had the status of a protected civil servant. (Docket Entry No. 51 at 3). She did not. *See* (Docket Entry Nos. 45-10, 45-17). Shortly thereafter, Ms. Berry filed an EEOC complaint of discrimination and harassment. (Docket Entry No. 45-13).

3

Other similar incidents, which Ms. Berry saw as workplace indignities or injustices, resulted in immediate emails to Ms. Johnson and Ms. Ikpeme from Ms. Berry, or oral complaints, or both.

When Ms. Berry changed her work arrival time by 30 minutes to avoid walking to and from the parking garage with a group of people, she encountered another group of people walking to and from the garage. (Docket Entry No. 31 at 7). She believed that because this group was arriving and leaving work at the same time she was, she was being followed and harassed, and began taking pictures of the other employees. (*Id.*). She continued to report to Ms. Ikpeme and Ms. Johnson that she was being "mobbed" on her way to and from the parking garage. (*Id.*). When a coworker who Ms. Berry believed was "often hovering" over her shoulder commented on a computer course she was taking, she reported him. (Docket Entry No. 51 at 5); (Docket Entry No. 44-5 at 15). When that same coworker came into the filing room where she worked and "hit" the back of her chair with her arm, she reported him; that employee was reprimanded and moved to another area. (Docket Entry No. 51 at 5–6); (Docket Entry No. 44-5 at 15–16).

In short, Ms. Berry complained about even the slightest workplace interactions with other employees and took offense at innocuous and mundane occurrences. Despite the lack of any evidence that religion came up more than once, she alleges discrimination on the basis that she is Muslim. Despite the lack of any evidence that any ethnic slur or non-trivial comment was made, she alleges discrimination on the basis that her national origin is Egyptian. Despite the lack of any evidence that she was treated less favorably than other similarly situated temporary employees of the City, she alleges discrimination and retaliation.

Ms. Berry was taking thousands of pictures and videos of coworkers who she apparently believed were "mobbing" her as she walked between the building where they all worked and the attached parking garage where they all parked. *See* (Docket Entry No. 45-12). As the

photographing became more obvious and frequent, employees complained. (Docket Entry No. 45-1 at 3). Several employees from other departments complained, and they shared fears for their safety and the safety of their coworkers. (*Id.*); *see, e.g.*, (Docket Entry No. 45-19). At a meeting in January 2023 already scheduled for Ms. Berry's Houston Employee Assessment and Review, Ms. Berry was told by Ms. Johnson and Ms. Ikpeme that she had to stop photographing other employees and their cars because of the workplace disruption it caused. (Docket Entry No. 45-1 at 3–4). Ms. Berry was also told that if she did not stop, she could be terminated. (*Id.* at 4). Ms. Berry continued to photograph other employees, who continued to complain. (*Id.*).

On January 30 or February 1, 2023, Ms. Ikpeme met with Ms. Berry to ask whether she was still taking pictures of employees and whether she was putting the pictures on social media. (Docket Entry No. 45-9 at 4). Ms. Berry refused to answer. Ms. Ikpeme again told Ms. Berry to stop taking photographs of employees without their permission and again warned her that failure to comply with management's order to stop could lead to termination. (*Id.* at 4–5).

About a week later, on February 9, 2023, an employee from a different department reported that Ms. Berry continued to take pictures of her in the parking garage and stated that it made her feel "unsafe." (Docket Entry No. 45-21). That report was forwarded to Ms. Berry's supervisors. (Docket Entry No. 45-5). On February 14, 2023, Ms. Johnson asked Ms. Berry for a statement as to whether she was still taking photographs of other employees after she had been instructed to stop. (Docket Entry No. 45-1 at 4). Ms. Berry refused to provide a statement. (*Id.*).

Because Ms. Berry refused to stop taking photographs of other employees despite management's repeated orders to do so, and because her continued photographing of other employees was causing disruption in the workplace, Ms. Ikpeme recommended the termination of Ms. Berry's temporary employment. (Docket Entry No. 45-9 at 5). Deputy Directory Deborah

5

Moore and Ms. Johnson agreed with Ms. Ikpeme's recommendation of termination. (Docket Entry No. 45-1 at 4). Department Director Stephen Williams sent Ms. Berry a termination letter on February 16, 2023. (Docket Entry No. 45-22). Ms. Berry amended her EEOC charge to add claims of unlawful termination. (Docket Entry No. 45-14). She also contends that she had applied to a number of other positions in the City, but was hired for none, accusing the defendants of having prevented her from even being considered out of discrimination and retaliation. (Docket Entry No. 31 at 6).

No one replaced Ms. Berry, and her temporary position was eliminated after her termination. (Docket Entry No. 45-9 at 5).

## II.     The Legal Standard

### A.     Title VII Claims for Discrimination

Title VII claims for discrimination are analyzed under the three-part burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Under that framework, a plaintiff carries the initial burden to establish a prima facie case of discrimination by showing she:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 429 (5th Cir. 2023) (per curiam) (quoting reference omitted) (alteration adopted); *see also McDonnell Douglas Corp.*, 411 U.S. at 802.

If the claimant makes a prima facie case, then the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp.*, 411 U.S. at 802. If the employer does so, the burden shifts back to the plaintiff to show that the employer's given reason is a pretext for illegal discrimination. *See id.* at 804.

6

B.   **Title VII Claims for Retaliation**

Title VII Retaliation claims are also analyzed under the *McDonnell Douglas* burden-shifting framework. *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023). To establish a prima facie case of retaliation, a plaintiff must show: "(1) [s]he engaged in conduct protected by Title VII; (2) [s]he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Id.* (quoting reference omitted).

C.   **Title VII Claims for Harassment**

To establish harassment in violation of Title VII, a plaintiff "must show that the harassment created a hostile or abusive working environment." *Johnson v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 455 (5th Cir. 2024) (quotation marks and quoting reference omitted). This requires the plaintiff to show: "(1) membership in a protected group; (2) harassment (3) based on a factor rendered impermissible by Title VII; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment yet failed to address it promptly." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012).

D.   **Summary Judgment**

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it 'might affect the outcome of the suit.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

(quoting *Anderson*, 477 U.S. at 248). When considering a motion for summary judgment, the court "must consider all facts and evidence in the light most favorable to the nonmoving party" and "must draw all reasonable inferences in favor of the nonmoving party." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and pointing to record evidence demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c). "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial.'" *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration adopted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

If the movant meets its Rule 56(c) burden, the nonmovant "must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting reference omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation marks and quoting reference omitted). Rather, the nonmovant "must identify specific evidence in the record and articulate the precise manner in which the evidence supports [its] claim." *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (alteration adopted) (quotation marks and quoting reference omitted).

The movant is entitled to judgment as a matter of law where "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. But "[i]f 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250–51).

**III.    Analysis**

    **A.    The Title VII Discrimination and Retaliation Claims**

Ms. Berry is a member of a protected group. She was qualified for the temporary position she held at the City. She was terminated from that position and did not succeed in her efforts to obtain other employment with the City. The issues are whether she suffered adverse actions other than termination and the failure to be hired for other City jobs, and whether the City's proffered reasons for the employment actions it took were a pretext for discrimination or retaliation.

Ms. Berry complained of a host of perceived workplace slights and offenses. Even with the Fifth Circuit's broad range of "adverse employment actions," *see Harrison*, 82 F.4th at 430 (an adverse employment action "need only be a term, condition, or privilege of employment," which "should be broadly construed") (quoting reference omitted), the only events shown in the record that rise to that level are her termination and inability to get a permanent City job.

Ms. Berry had one conversation with Ms. Ikpeme in which Jesus, Muslims, and Egypt were mentioned; Ms. Berry complained, and Ms. Ikpeme did not mention religion to Ms. Berry again. A fellow employee who Ms. Berry complained hovered over her shoulder and on one occasion hit the back of her chair was reprimanded and moved to a different location. The litany of perceived workplace slights Ms. Berry alleges were both too fleeting and too inconsequential to warrant an official response. Ms. Berry viewed the normal workplace activity of employees going between

9

their office and the parking garage at roughly the same time—a normal occurrence in any workplace, as many workers tend to arrive and leave at roughly the same time of day—as a sinister activity to "mob" her. None of the interactions that led to her many emailed and oral complaints meet the criteria of adverse employment actions. *See id.* at 431 ("adverse action" must be more than de minimis); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (stating that "careful attention to the requirements of [Title VII]" is required to avoid "transform[ing] Title VII into a general civility code for the American workplace"). Ms. Berry has failed to show that she suffered any adverse action except her termination and inability to obtain a permanent position working for the City.

Undisputed evidence shows that the City did not hire anyone to replace Ms. Berry, and her temporary position was eliminated after her termination. (Docket Entry No. 45-9 at 5). There is no evidence of a similarly situated employee who had a comparable history of violating employment policies and refusing to obey management orders but was not terminated. Ms. Berry has failed to establish a prima facie case of discrimination. *See Harrison*, 82 F.4th at 429.

Even assuming that Ms. Berry carried her initial burden, the City has presented evidence that she was terminated for a nondiscriminatory reason, unrelated to any complaints she filed. Ms. Berry took thousands of photographs and videos of many of her coworkers without their permission. She was repeatedly warned to stop at the risk of termination. She did not stop. She was terminated. She points to no basis to infer that her religious or national origin was a motivating factor in the decision to terminate her temporary employment. Nor does she point to evidence raising a fact issue that the City actually terminated her in retaliation for her complaints. The record amply shows that the City had a legitimate reason to terminate Ms. Berry's employment—

her repeated violation of a workplace instruction—that is devoid of pretext for discrimination or retaliation.

Ms. Berry complains that her unsuccessful efforts to obtain permanent employment with the City must have been the result of a "blacklist" based on her religion or national origin, or in retaliation for her complaints during her employment. (Docket Entry No. 44-5 at 33); *see also* (Docket Entry No. 31 at 6). There is no evidence of any such blacklist. Most of the jobs Ms. Berry sought were outside the Health Department. There is no evidence that the people hiring for those jobs knew Ms. Berry's religion or national origin, or that they knew about her employment complaints—much less that they factored any of those things into their hiring decisions. To the contrary, the City has presented unrefuted evidence that the people filling the permanent positions to which Ms. Berry applied were selected because they were more qualified than Ms. Berry. (Docket Entry No. 45-16). Ms. Berry's claim of discrimination and retaliation in her failure to obtain other jobs in the City fails for lack of evidence.

Because Ms. Berry has failed to raise a genuine dispute of material fact regarding her Title VII discrimination and retaliation claims, those claims are dismissed with prejudice.

**B.     The Title VII Hostile Work Environment and Harassment Claims**

Similarly, none of the many complaints Ms. Berry made and describes in her lawsuit meet the criteria for harassment. For harassment to be actionable under Title VII, "it must be sufficiently severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment.'" *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (alteration adopted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim

perceived it to be so." *Id.* (quoting *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)).

Ms. Berry's complaints do not meet that standard. The evidence shows Ms. Ikpeme's single conversation with Ms. Berry about Jesus; Ms. Ikpeme's reminders to Ms. Berry that her job was temporary; an employee hitting the back of Ms. Berry's chair on one occasion; and the fact that other employees travelled with Ms. Berry to and from the parking garage at approximately the same time. None of this amounts to objectively hostile behavior. *See Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1067 (5th Cir. 2023) ("[I]solated incidents" do not establish an objectively offensive work environment in violation of Title VII "unless [they are] extremely serious.") (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Even if there were numerous actions that Ms. Berry subjectively found hostile and abusive, they do not amount to conduct that was objectively hostile and abusive. *Cf. id.* (when considering whether a work environment is objectively offensive, courts distinguish between comments that are "physically threatening or humiliating" and those that are "merely an offensive utterance").

Nor is there any basis to infer that the actions Ms. Berry found so offensive were targeted at her because of her religion or national origin. It seems clear that Ms. Berry made herself an unpopular coworker, who frequently complained about others and who saw sinister reasons behind the actions of others. But the evidence does not support an inference that she was singled out because she was Muslim or Egyptian, or that the conduct that she subjectively found so offensive rose to the level of objective harassment. *See Harvill*, 433 F.3d at 434.

Lastly, the City looked into Ms. Berry's complaints and responded when it could do so. Ms. Ikpeme was counseled not to talk about religion in the workplace. The man who was accused of hovering next to Ms. Berry and hitting the back of her chair was reprimanded. The one person

12

who did not heed repeated counsel about the need to change one workplace habit was Ms. Berry, who ignored warnings that if she continued to photograph her coworkers in the parking garage, she would be fired.

Ms. Berry's Title VII claim for harassment is dismissed with prejudice.

### C.     The First Amendment Claim

Finally, Ms. Berry's asserts that she was terminated in retaliation for the reports she made about the alleged discrimination and harassment, in violation of the First Amendment. (Docket Entry No. 31 at 10). Although her allegations are not entirely clear, Ms. Berry seems to also suggest that her termination violated the First Amendment because her photographing of other employees to document their discrimination and harassment is protected conduct.

The law is clear that for a public employee to assert a First Amendment retaliation claim, the speech must involve a matter of public concern. *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016). Speech does not involve a matter of public concern if it "cannot be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983).

There is no question that Ms. Berry complained to her supervisors about her work conditions, but her complaints were solely about her own personal issues as an employee. The only possible exception is her complaint that her supervisor on one occasion spoke to her about Jesus. Her complaint resulted in that supervisor being instructed not to discuss religion in the workplace, resolving the issue. That event occurred in either September 2021 or January 2022, (Docket Entry No. 44-5 at 18), over a year before Ms. Berry was terminated. The facts in the summary judgment record do not support any inference of retaliation for that complaint.

Ms. Berry's other complaints were about matters that were personal to her. She complained when she had to enter her time under a new funding code, a mere administrative change. She complained that other employees who arrived and left work at the same times she did were following her to and from the parking garage. She complained that another employee was hovering near her and hit the back of her chair. None of these complaints were on matters of public concern. Her acts of taking more than 6,000 photographs of other employees, without their consent and over their protests, were not protected under the First Amendment, because they were done out of her personal motivation to identify fellow employees who were going to and from the garage at the same times of day she was. Ms. Berry provides no explanation for how these photographs or complaints "relat[e] to any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146; *see also Branton v. City of Dallas*, 272 F.3d 730, 740 (5th Cir. 2001) (speech about "an employee's employment grievance," without more, is not public) (quoting reference omitted).

Finally, as detailed above, the record defeats any inference that Ms. Berry was fired in retaliation for her complaints. To the contrary, the record shows that Ms. Berry was fired because she persistently and repeatedly violated a management order to stop taking photographs of other employees. The defendants are entitled to summary judgment on Ms. Berry's First Amendment claim.

## IV. Conclusion

Ms. Berry's claims that she was treated illegally, and fired illegally, from her temporary employment with the City of Houston are dismissed as lacking merit in fact or law. The defendants' motion for summary judgment, (Docket Entry No. 44), is granted, and all of Ms.

Berry's claims against all defendants are dismissed with prejudice. Final judgment is entered by separate order.

SIGNED on December 26, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge